UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| BILLY NELSON, § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 3:20-CV-00133 |
| § | |
| PNK (LAKE CHARLES) LLC, et. al. § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendants' Rule 12(b)(2)/(3) Motion to Dismiss For Lack of Personal Jurisdiction or Improper Venue; Or In The Alternative, To Transfer To the Western District of Louisiana For Convenience ("Motion to Dismiss"). *See* Dkt. 12. After reviewing the motion, the response, and the reply, I **RECOMMEND** that the Motion to Dismiss be **GRANTED**, and this case be transferred to the Western District of Louisiana, Lake Charles Division.

### BACKGROUND

This is a personal injury case. Plaintiff Billy Nelson alleges that he was injured on July 26, 2018, while standing outside his vehicle in the valet lane of the L'Auberge Casino Resort in Lake Charles, Louisiana when a valet driver struck the passenger door of his vehicle, which then hit and injured him.

On March 23, 2020, Nelson filed this lawsuit in the 405th Judicial District of Galveston County, Texas, against Penn National Gaming Inc. ("Penn National"), Pinnacle Entertainment Inc. ("Pinnacle"), PNK (Lake Charles) LLC d/b/a L'Auberge Du Lac Hotel

& Casino ("PNK"), and John Doe (the valet driver) for negligence and gross negligence. PNK timely removed the case to federal court based on diversity jurisdiction.

In their Motion to Dismiss, Defendants advance three separate arguments. First, Defendants argue that venue in the Southern District of Texas is improper. Second, Defendants claim that this case should be dismissed for lack of personal jurisdiction. Third, Defendants assert that in the event venue is proper and personal jurisdiction exists, the case should nonetheless be transferred to the Western District of Louisiana, Lake Charles Division under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses. Because I conclude that venue is not proper in the Southern District of Texas, it is unnecessary to decide the other issues raised by Defendants.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss a case for "improper venue." FED. R. CIV. P. 12(b)(3). "Venue" refers to the location of the court or courts in which it is proper to file an action.

The general federal venue statute, 28 U.S.C. § 1391, governs "all civil actions brought in [the] district courts of the United States" unless "otherwise provided by law." 28 U.S.C. § 1391(a). Section 1391(b) provides that an action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.* § 1391(b). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tx.*, 571 U.S. 49, 56 (2013). The language of § 1391 "makes clear that venue in 'all civil actions' must be determined in accordance with the criteria outlined in that section," and does not permit a court to consider "other, extrastatutory limitations on the forum in which a case may be brought." *Id.*

Although the Fifth Circuit has yet to address which party bears the burden on a Rule 12(b)(3) motion, most district courts within this circuit have held that once a defendant challenges venue, the plaintiff has the burden to prove that venue is proper. *See, e.g.*, *Broadway Nat'l Bank v. Plan Encryption Techns., LLC*, 173 F. Supp. 3d 469, 473 n. 2 (W.D. Tex. 2016) (collecting cases); *Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 897 (S.D. Tex. 2013). I agree with those district courts placing the burden on the plaintiff "because to hold otherwise would circumvent the purpose of the venue statutes—it would give plaintiffs an improper incentive to attempt to initiate actions in a forum favorable to them but improper as to venue." *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 458 (S.D. Tex. 1996) (internal quotation marks, brackets, and citation omitted).

In determining whether venue is proper, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. v.*

3

*Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). A district court may consider evidence in the record beyond the facts alleged in the complaint and its attachments, such as affidavits or other evidence submitted by the parties as part of the motion to dismiss for improper venue or the response to the motion. *See Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009). If venue is improper, I have broad discretion to dismiss the case or, in the interest of justice, transfer the case to any district where venue is proper. *See* 28 U.S.C. § 1406(a).

District courts generally decide issues of personal jurisdiction before issues of venue. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum."). But the Supreme Court has recognized that "when there is a sound prudential justification for doing so, . . . a court may reverse the normal order of considering personal jurisdiction and venue." *Id.* By resolving the venue issue first, I "render[] the personal jurisdiction problem moot and avoid[] the need to address constitutional questions. It is thus appropriate to consider venue as an initial matter." *Nuttall v. Juarez*, 984 F. Supp. 2d 637, 642 (N.D. Tex. 2013).

### ANALYSIS

To establish proper venue here in the Southern District of Texas, Nelson needs to meet the requirements of one of the three alternatives set out in 28 U.S.C. § 1391(b).

Nelson contends that venue is proper in the Southern District of Texas under § 1391(b)(1).[1] This section provides that venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). A plaintiff's residence is completely irrelevant in determining venue under § 1391(b)(1). *See Emrit v. Desert Parkway Behav. Hosp.*, No. 18-00435 LEK, 2019 WL 2397801, at *3 (D. Haw. June 6, 2019). Applied here, § 1391(b)(1) looks at whether all defendants are residents of Texas, and if so, permits suit to be brought in any district within the Lone Star State.

For venue purposes, the residency of a corporation or limited liability company is determined by reference to 28 U.S.C. § 1391(c)(2), which states:

> an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business.

28 U.S.C. § 1391(c)(2). "The venue analysis thus largely collapses into a personal jurisdiction analysis." *Graham v. Dyncorp Int'l, Inc.*, 973 F. Supp. 2d 698, 701 (S.D. Tex. 2013).

---

[1] The other two venue provisions of § 1391(b) are clearly inapposite. Section 1391(b)(2) is inapplicable because the Southern District of Texas is not where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Section 1391(b)(3) is a fall back option and applies only if no other venue is proper. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 434–35 (2d Cir. 2005). This provision has no application to this set of facts since venue is unquestionably proper under § 1391(b)(2) in the judicial district where the incident giving rise to this lawsuit occurred—the Western District of Louisiana.

If a corporate defendant is "subject to personal jurisdiction" in a state with multiple judicial districts (like Texas), the "corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d).

Given this statutory guidance, the ultimate question here is whether all the defendants are subject to personal jurisdiction in the State of Texas. If the answer is yes, venue is proper in the Southern District of Texas. If the answer is no, venue is improper. To provide a proper framework for this analysis, let me provide a brief overview on the law of personal jurisdiction.

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc. v. Ironshore Speciality Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). "To comport with due process demands, a plaintiff in a diversity case must establish that the non-resident defendant purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state and that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Zoch v. Magna Seating (Ger.) GmbH*, 810 F. App'x 285, 288 (5th Cir. 2020) (internal quotation marks, brackets, and citation omitted).

The United States Supreme Court has recognized two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1779–80 (2017). General jurisdiction exists over a non-resident defendant when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction, on the other hand, demands a connection between the incident in question and the forum state. *See Walden v. Fiore*, 571 U.S. 277, 283–84 (2014).

Let me first quickly dispose of specific jurisdiction, which both parties acknowledge does not exist here. That is because the current controversy does not relate to or arise out of Defendants contacts with the State of Texas. Indeed, the accident at issue in this personal injury lawsuit took place in Louisiana, not Texas. As a result, Texas cannot exercise specific jurisdiction over Defendants.

As far as general jurisdiction is concerned, I must determine whether general jurisdiction exists over each of the Defendants. *See* 28 U.S.C. § 1391(b)(1). It is Nelson's contention that "Defendants' contacts with this forum are continuous and systematic and satisfy the requirement for general jurisdiction." Dkt. 18 at 4. "The Defendants' long standing and continuous business enterprises at . . . racetracks in Texas . . . illustrate that they are 'at home' in the current forum state (Texas)," argues Nelson. *Id.*

I do not agree. In *Daimler AG v. Bauman*, the Supreme Court held that general jurisdiction exists over a corporation in a state "in which the corporation is fairly regarded

7

as at home." 571 U.S. 117, 137 (2014) (internal quotation marks and citation omitted). The Supreme Court explained:

> [T]he [general jurisdiction] inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are *so* 'continuous and systematic' as to render it essentially at home in the forum State."

*Id.* at 138–39 (quoting *Goodyear*, 564 U.S. at 919) (brackets omitted and emphasis added). A corporation's "home" for general jurisdiction purposes generally falls into two paradigmatic places: (1) the state of incorporation, and (2) the state where the entity has its principal place of business. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). "Even though a corporation might operate 'in many places,' it cannot 'be deemed at home in all of them' because unpredictability would follow and jurisdictional rules are meant to 'promote greater predictability.'" *Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020) (quoting *Daimler*, 571 U.S. at 137, 139 n.20). As the Fifth Circuit has expressly recognized on several occasions: "it has become 'incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.'" *Id.* at 336 (quoting *Monkton Ins. Servs. Ltd v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)). Indeed, the Supreme Court has found a sufficient basis for general jurisdiction against a business entity in only one case decided since the advent of the modern personal jurisdiction doctrine. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). And that case, decided almost 70 years ago, presented an incredibly unique fact pattern.

In *Perkins*, the high court found general jurisdiction to exist in Ohio when the defendant, a Philippine mining corporation, had ceased activity in the Philippines during

8

World War II, conducted all its business in Ohio, and the company president supervised all company activities from an office in Ohio where all company files were kept. *See id.* at 447–49. Suffice it to say that exceptional circumstances must exist to support general jurisdiction in a place other than the state of incorporation or the state where the entity has its principal place of business.

Earlier this year, the Fifth Circuit squarely addressed whether a federal court in Texas could exercise general jurisdiction over PNK. *See Frank*, 947 F.3d at 339. In *Frank*, family members of a deceased casino patron brought a wrongful death action in the Southern District of Texas against PNK. *See id.* at 334. PNK is a limited liability company domiciled in Louisiana.[2] *See id.* at 337. The *Frank* plaintiffs argued that PNK's contacts with Texas were sufficient to permit the exercise of general jurisdiction because PNK targeted advertising activities at Texas residents. *See id.* at 338. In granting PNK's motion to transfer, the district court found that PNK's advertising "was promoted nationally and did not establish systematic and continuous contacts with Texas that confer general jurisdiction." *Id.* at 335 (internal quotation marks omitted). The Fifth Circuit affirmed the district court's finding that it lacked general personal jurisdiction over PNK in Texas, stating:

> PNK's corporate contacts with Texas are not of the exceptional nature such that PNK could be found to be "at-home" in Texas . . . . Here, the inquiry is whether PNK's targeted advertising renders it "at home" in Texas. The answer is no . . . . There is no evidence pointing to PNK's physical operations being located in Texas. Indeed, it is uncontroverted that PNK does not have

---

[2] Although PNK is a limited liability company rather than a corporation, the same "at home" test applies to limited liability companies. *See Daimler*, 571 U.S. at 139.

> employees or registered agents stationed in Texas; a Texas license or permit; offices, gaming facilities or real estate in Texas; nor does it have a bank account or pay taxes in Texas . . . . A business, like PNK, is not "at home" in Texas merely because it solicits business from Texans.

*Id.* at 338, 339, 341. The Fifth Circuit's holding is obviously binding on this Court. As such, I cannot exercise general jurisdiction over PNK.

As noted above, venue is proper in the Southern District of Texas only if *all* the defendants are subject to personal jurisdiction in the State of Texas. *See* 28 U.S.C. § 1391(b)(1). Because this Court lacks personal jurisdiction over PNK, venue is improper in the Southern District of Texas under § 1391(b)(1).

As a side note, even if I possessed general personal jurisdiction over PNK, venue would still be improper in the Southern District of Texas because I cannot exercise general jurisdiction over the other two corporate defendants—Penn National or Pinnacle. Penn National is a Pennsylvania corporation with its principal place of business in Wyomissing, Pennsylvania. Pinnacle is a Delaware corporation with its principal place of business in Las Vegas, Nevada. As I have explained above, the current state of personal jurisdiction law makes it incredibly difficult for Nelson to establish general jurisdiction for Penn National or Pinnacle in a forum other than the state of incorporation or the principal place of business.

With respect to Pinnacle, Nelson does not make a single argument as to why Pinnacle is subject to general jurisdiction. Nelson has the burden of making a prima facie showing of personal jurisdiction, and the absence of such evidence must be construed

against him. *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). I have no basis to conclude that general jurisdiction over Pinnacle exists in this District.

Claiming that Penn National owns and operates two racetracks in Texas, and hires casino hosts in Texas to solicit potential customers, Nelson argues that such contacts with the state give rise to general jurisdiction over Penn National. Penn National strongly refutes the allegation that it owns and operates the horse racing facilities in Texas. But even if I assume, for the sake of argument, that Penn National owns the two Texas racetracks and utilizes casino patrons to target Texas residents, that is nowhere near enough to qualify as an "exceptional" case that could sustain general jurisdiction. *See Patterson v. Aker Sols., Inc.*, 826 F.3d 231, 234 (5th Cir. 2016).

Remember, the general jurisdiction test requires a plaintiff to show that a nonresident defendant's contacts with the forum are so substantial, continuous, and systematic that the defendant is essentially "at home" in the forum. *See Daimler*, 571 U.S. at 139 n.20. In measuring whether Penn National's contacts with Texas are sufficient to impose general jurisdiction, the inquiry does not focus merely on the magnitude of the defendant's in-state contacts. "General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.* Here, Nelson "did not present evidence to enable this Court to engage in this kind of qualitative analysis of [Penn National's] total business operations." *Garcia Hamilton & Assocs. LP v. RBC Cap. Mkts., LLC*, --- F. Supp. 3d ---, 2020 WL 3078330, at *5 (S.D. Tex. June 10, 2020). Without such evidence, I cannot conclude that Penn National should be deemed "at home" in Texas. *See BNSF*, 137 S. Ct. at 1559 (no general jurisdiction in Montana even though

railroad company had more than 2,000 miles of track in Montana, employed 2,100 individuals in Montana, and maintained an automotive facility in Montana when these contacts were a small part of the company's total business contacts); *Garcia Hamilton & Assocs.*, 2020 WL 3078330, at *5 (no general jurisdiction over a limited liability company even though the entity had "significant Texas operations," including four Texas offices, 250 employees in Texas, a division focused exclusively on wealth management in Texas, and hundreds of yearly transactions generated out of a business presence in Texas); *Norman v. H&E Equip. Servs., Inc.*, No. 3:14-CV-367, 2015 WL 1281989, at *4–5 (M.D. La. Mar. 20, 2015) (no general jurisdiction in Louisiana even though the corporate defendant owned three chemical plants in Louisiana because corporation was not incorporated in Louisiana, had its principal place of business outside of Louisiana, and operated plants in more than 90 countries).

Given my finding that venue is improper in this District, I have discretion to dismiss the case or transfer the case in the interest of justice to any district where it could have been brought. *See* 28 U.S.C. § 1406(a). "In general, the interest of justice requires transferring such cases to the appropriate judicial district rather than dismissing them." *Graham*, 973 F. Supp. 2d at 705 (internal quotation marks and citation omitted). I will, therefore, recommend that this case be transferred to the Western District of Louisiana, Lake Charles Division.

## CONCLUSION

For the reasons identified above, I **RECOMMEND** that the Motion to Dismiss be **GRANTED**, and this case transferred to the Western District of Louisiana, Lake Charles Division.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 30th day of September, 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE